UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SIENG KIM KHIM,<br><br>                    Petitioner,<br><br>        v.<br><br>PAMELA BONDI, *et al.*,<br><br>                    Respondents. | CASE NO. 2:25-cv-02383-RSL<br><br>ORDER GRANTING A WRIT OF HABEAS CORPUS AND INJUNCTION |

This matter comes before the Court on a "Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 and Request for Injunctive Relief." Dkt. 2. Respondents oppose the petition. Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

**BACKGROUND**

Mr. Khim was born in Cambodia in October 1973 in the midst of a civil war: he has no birth certificate or other record proving Cambodian citizenship. He and his family were admitted to the United States as refugees in the early 1980s.[1] Mr. Khim's status was adjusted to Lawful Permanent Resident in January 1989, retroactive to his date of entry. In October 1993, Mr. Khim was convicted of possession of an unregistered firearm, and ICE

---

[1] Mr. Khim asserts that he entered the United States in or around 1981. ICE records reflect an entry date of July 24 or 26, 1984. Dkt. 13-1 at 2 and 4; Dkt. 13-2 at 3.

ORDER GRANTING A WRIT OF HABEAS CORPUS AND
INJUNCTION - 1

issued an Order to Show Cause (the precursor of the Notice to Appear).[2] Mr. Khim was ordered removed to Cambodia on October 26, 1995, and held in ICE detention for more than three years. He was released on an Order of Supervision on December 11, 1998, because the United States Immigration and Customs Enforcement ("ICE") was unable to obtain travel documents for him.

When Mr. Khim reported to ICE on August 22, 2025, in accordance with the conditions of his release, he was re-detained "[p]er ERO headquarters guidance [that] there is now a significant likelihood of removal to Cambodia in the reasonably foreseeable future." Dkt. 13-2 at 3. He was served with a Notice of Revocation of Release Letter and interviewed on that date. Deportation Officer Miller noted on the Record of Deportable/Inadmissible Alien that Mr. Khim "has 22 pages of criminal history." Dkt. 13-2 at 4.[3] There is no indication, however, that Mr. Khim failed to comply with the conditions of his release prior to his re-detention in August 2025.[4] Nor is there any indication that Mr. Khim has been requested to complete a travel document application, that an application has been translated, that internal permissions to make a Travel Document Request ("TDR") to the government of Cambodia have been sought or granted, or that a TDR request has been made. Mr. Khim remains in ICE custody at the Northwest ICE Processing Center in Tacoma, Washington.

---

[2] Although respondents argue that Mr. Khim was placed in removal proceedings because of four separate criminal arrests, charges, and/or convictions occurring in 1993, Dkt. 11 at 5, only the October 12, 1993, conviction is mentioned in the contemporaneous records, Dkt. 13-1 at 4.

[3] Deportation Officer Liu's summary of an "FBI RAP sheet" that has not been submitted to the Court or authenticated is inadmissible hearsay and has not been considered. Dkt. 12 at ¶ 5. Petitioner concedes his criminal conviction history in reply, however, and it can be considered as an admission. Dkt. 14 at 8. Nevertheless, the focus of the *Zadvydas* analysis is whether there is a significant likelihood of removal in the reasonably foreseeable future, not whether the petitioner poses a flight risk or a danger to the community.

[4] Respondents' assertion that one of the conditions of Mr. Khim's release was that he refrain from committing any federal, state, or local crimes is not supported by the cited document. Dkt. 11 at 5-6; Dkt. 13-4 at 2.

ORDER GRANTING A WRIT OF HABEAS CORPUS AND
INJUNCTION - 2

On November 25, 2025, Mr. Khim filed the present petition for writ of habeas corpus pursuant to 28 U.S.C § 2241 challenging his immigration detention under the United States Constitution, the Immigration and Nationality Act ("INA") and its implementing regulations, the Convention Against Torture ("CAT"), and the Administrative Procedure Act ("APA"). Mr. Khim argues that he is entitled to habeas relief on five grounds: (1) his recent detention is unreasonable because there is no significant likelihood of removal in the reasonably foreseeable future; (2) Mr. Khim was detained without notice and an opportunity to be heard; (3) respondents failed to comply with the requirements of 8 C.F.R. § 241.13 before detaining Mr. Khim; (4) respondents' conduct shocks the conscience and interferes with rights at the core of our concept of ordered liberty because Mr. Khim's detention is punitive and exceeds the regulatory purpose of immigration detention; and (5) deporting Mr. Khim to a third country would constitute punitive third country banishment and violate the Fifth and Eighth Amendments. Mr. Khim seeks immediate release from custody, an order prohibiting his further detention without notice and a hearing before a neutral decisionmaker, an order requiring respondents to reopen removal proceedings and provide notice and an opportunity to be heard before attempting to remove Mr. Khim to a third country, and a finding that third-country removal imposes unconstitutional punishment and is not available here.

## DISCUSSION

The Court first considers the legal standards for detaining noncitizens during immigration proceedings and then turns to the parties' arguments concerning the present immigration habeas petition.

**A. Legal Standards Under the INA**

The INA expressly permits detention of noncitizens who were admitted to the United States but subsequently ordered removed during immigration proceedings. 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). Once a noncitizen is ordered removed, the

ORDER GRANTING A WRIT OF HABEAS CORPUS AND
INJUNCTION - 3

Department of Homeland Security (of which ICE is a part) has 90 days in which to accomplish removal. 8 U.S.C. § 1231. During that 90-day removal period, the noncitizen must be detained. 8 U.S.C. § 1231(a)(2). When the government fails to remove the noncitizen during that period, detention may continue if: (1) the noncitizen is "inadmissible" for specified reasons, (2) the noncitizen is "removable" as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy, or (3) the noncitizen has been "determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).

Even if detention past the statutory 90-day removal period is justified under 8 U.S.C. § 1231(a)(6), the INA does not permit indefinite detention. *Zadvydas*, 533 U.S. at 682 (finding that, in order to avoid serious constitutional concerns, the INA must be interpreted to limit detention following entry of a removal order to a "period *reasonably necessary* to secure [the noncitizen's] removal" from the United States) (emphasis in original). When determining whether continued detention was justified, the reviewing court "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the [noncitizen's] presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by the statute." *Id.* at 699-700.

The Supreme Court recognized, however, that the Executive Branch has greater immigration-related expertise, is enforcing a complex and extensive statute, and is the nation's voice in immigration matters. *Id.* at 700. In the hopes of saving federal courts from having to make difficult judgment calls regarding how much leeway to give the Executive and in order to promote the uniform administration of the statute, the Court adopted a presumptively reasonable period of detention of six months. *Id.* at 700-01. After six months of detention, a noncitizen may seek release by showing "good reason to believe

that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. The burden then shifts to the government to present "evidence sufficient to rebut that showing." *Id.* If the government is unable to meet its burden, then the noncitizen must be released from detention. *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

A noncitizen who is subject to a final order of removal but has been released from custody may be re-detained for failure to comply with the conditions set forth in the Order of Supervision or if, pursuant to a change in circumstances, ICE "determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). Upon the noncitizen's return to custody, he must be given notice of the reasons his release was revoked and an opportunity to respond and submit evidence. 8 C.F.R. § 241.13(i)(3). When a noncitizen is re-detained because of a change in circumstances, 8 C.F.R § 241.13(f) sets forth the factors the government must consider when determining whether there is a significant likelihood that the noncitizen will be removed in the reasonably foreseeable future.

**B. Mr. Khim's Detention is Unlawful**

    **1.** *Zadvydas v. Davis*

Mr. Khim has been detained for significantly more than six months. He was first detained after his weapons conviction from October 1995 to December 1998 – more than three years. He was again detained on August 22, 2025, and remains in ICE custody. In total, Mr. Khim has been detained for almost three and a half years. His detention is not, therefore, presumed to be reasonable under *Zadvydas*, 533 U.S. at 701. Respondents do not concede that the presumptively reasonable period has ended, but provide no argument or case law suggesting that the period restarts with each non-consecutive detention. This and other courts around the country have rejected similar arguments. *Abubaka v. Bondi*, No. 2:25-cv-01889-RSL, 2025 WL 3204369, at *3 (W.D. Wash. Nov. 17, 2025); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721-22 (W.D. Wash. 2025); *Sied v. Nielsen*, No. 17-cv-06785-

LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018); *Chen v. Holder*, No. 6:14-cv-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015). This Court agrees with that analysis: Mr. Khim's detention is not presumptively reasonable.

In this situation, Mr. Khim's burden is to "offer a valid reason why removal is unforeseeable, which the *government* must then *disprove*." *Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wis. 2008) (emphasis in original). "[A]s the period of postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. Mr. Khim argues that there is reason to believe that he will not be removed in the reasonably foreseeable future (much less in the shorter period that applies when an individual has already been detained for almost seven times the presumptively reasonable period). Mr. Khim points out that the government has been unable to obtain travel documents for him for almost three decades, that he has no documentation or records showing that he is a Cambodian citizen, and that it appears that he was swept back into custody because ICE has a quota for immigrant detentions, not because of any individualized determination that he was likely to be removed in the near future. By their own admission, respondents have no idea how long it will take Cambodia to process a TDR for Mr. Khim, and, at this point in time, no such request has even been made. Respondents' avowed belief that Mr. Khim can be removed in the reasonably foreseeable future is based on little more than the facts that Cambodia has increased the number of removals over the past three years (from 6 in 2023, to 20 in 2024, to 55 in the first nine months of 2025) and that Thailand might be willing to issue travel documents. Dkt. 12 at ¶¶ 13-14. Neither of those facts suggest that Mr. Khim, with his characteristics and circumstances, is likely to be removed in the reasonably foreseeable future.[5]

---

[5] The Court rejects respondents' argument that detention becomes indefinite under *Zadvydas* only when the designated country of removal affirmatively refuses to issue travel documents or removal is otherwise a legal impossibility. Dkt. 11 at 9.

ORDER GRANTING A WRIT OF HABEAS CORPUS AND
INJUNCTION - 6

Given the shrunken period in which Mr. Khim can reasonably be held in aide of deportation, his continued detention is unreasonable and no longer authorized by the INA. *Zadvydas*, 533 U.S. at 699-700.

### 2. 8 C.F.R. § 241.13 and Due Process

To the extent Mr. Khim seeks release from custody to remedy alleged violations of 8 C.F.R. § 241.13(i), 8 C.F.R. § 241.13(f), and the Due Process Clause of the Fifth Amendment, the relief is duplicative of that to which he is entitled under *Zadvydas*. Mr. Khim's challenges to the adequacies of the procedures used in re-detaining him are not moot, however, because he also seeks an order prohibiting his future detention without notice and a hearing before a neutral decisionmaker. The Court must therefore determine whether Mr. Khim received the process that was due and whether injunctive relief is appropriate.

Petitioner has not proven that respondents' conduct in re-detaining Mr. Khim violated 8 C.F.R. § 241.13(f) or (i). Pursuant to the regulations, ICE may revoke a noncitizen's release and take him into custody "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). While the Court disagrees with that determination for the reasons discussed above, that does not mean that ICE did not make the determination or that it did not consider the factors set forth in 8 C.F.R. § 241.13(f). Once Mr. Khim was re-detained, ICE provided notice that his release had been revoked because of a change of circumstances, and he was informally interviewed to see if he had any response to the reasons for the revocation. Dkt. 13-2 at 4. That seems to be all that is required by 8 C.F.R. § 241.13(i)(3).

Those meager procedures do not, however, provide the process due under the Fifth Amendment, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" The right to due process of law extends

ORDER GRANTING A WRIT OF HABEAS CORPUS AND
INJUNCTION - 7

to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. For the reasons set forth by the Honorable Kymberly K. Evanson in *E.A T.-B. v. Wamsley*, 795 F. Supp.3d 1316 (W.D. Wash. 2025), the Court finds that the government action at issue here is at the core of the liberty protected by the Due Process Clause, that the risks of erroneous deprivation of liberty are high, and that the government's interest in arresting and detaining a noncitizen without a hearing is low where the noncitizen was already released because the government had been persuaded that he would not abscond and would not pose a danger to the community.

**C. Removal to a Third Country**

Mr. Khim also seeks an order requiring respondents to reopen removal proceedings and provide notice and an opportunity to be heard before removing or attempting to remove him to a third country, as well as a finding that respondents' third-country removal policy imposes unconstitutional punishment and cannot be applied as written. Respondents only answer is an assertion that Mr. Khim's concern that he might be deported to a country other than Cambodia is not ripe for consideration because "that is not the case at this time and Petitioner provides no evidence ICE is seeking to remove him to a third country." Dkt. 11 at 7. That respondents may or may not be moving through the steps necessary to remove petitioner to Cambodia does not mean that they will forego the options set forth in ICE's July 9, 2025, internal memorandum regarding third-country removals. Dkt. 2 at 17; *Nguyen v. Scott*, No. 2:25-cv-1398-TMC, Dkt. 26-1 (W.D. Wash.). That memorandum, in conjunction with the likelihood that Mr. Khim will not be issued travel documents to Cambodia in the near future, the recent third-country deportations of hundreds of immigrants under ICE's new policies, and ICE's bald assertion that it may be able to obtain travel documents from Thailand give rise to an imminent threat that Mr. Khim will

face third-country removal in the absence of an injunction. Dkt. 2 at 17-18; Dkt. 12 at ¶ 14; *Nguyen*, 796 F. Supp.3d at 736-37.

In 2019, this Court held that a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998 at 1009-11 (W.D. Wash. 2019). Relying on the Due Process Clause and the relevant statutes and regulations, the undersigned also held that "[g]iving petitioner an opportunity to file a motion to reopen [his removal proceedings] . . . is not an adequate substitute for the process that is due process in these circumstances." *Id.* Rather, a petitioner must be able to pursue his claim for withholding of deportation in reopened removal proceedings before an immigration judge. *Id.* The *Aden* decisions "flow directly from binding Ninth Circuit precedent," and ICE's current policy on third-country removals "contravenes Ninth Circuit law." *Nguyen*, 796 F. Supp. 3d at 727-28.

With regards to the punitive nature of ICE's current third-country removal policy, the Court adopts the reasoning set forth in *Nguyen*, 796 F. Supp. 3d at 732-35, and finds that the government is intentionally removing noncitizens to countries with which they have no connection, often in contravention of the governing statute and regulations, and knowing that they will be subject to imprisonment or other punishment. Deportation with the intent to punish is punitive and violates the Due Process Clause. *See Wong Wing v. U.S.*, 163 U.S. 228, 236-38 (1896); *Abubaka v. Bondi*, No. 2:25-cv-01889-RSL, 2025 WL 3204369, at *8 (W.D. Wash. Nov. 17, 2025).

## CONCLUSION

For all of the foregoing reasons, the court GRANTS Mr. Khim's petition for writ of habeas corpus (Dkt. # 2). The Court ORDERS that Mr. Khim be released from custody immediately under the conditions of his most recent Order of Supervision and that he may not be re-detained unless and until notice and an opportunity to be heard before an

immigration judge is provided to determine whether re-detention is appropriate. Respondents, their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are PROHIBITED from (a) removing or attempting to remove Mr. Khim to a country other than Cambodia without notice and a meaningful opportunity to be heard in reopened removal proceedings before an immigration judge and (b) removing Mr. Khim to any country where he is likely to face imprisonment or other punishment upon arrival.

Dated this 17th day of December, 2025.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge